IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DANIEL FETZER,

    Plaintiff,

vs.                                  Case No. 4:07cv464-WS/WCS

JAMES R. McDONOUGH,
WALTER A. McNEIL,
and WARDEN ELLIS,

    Defendants.

                                     /

## REPORT AND RECOMMENDATION

Defendants filed a motion for summary judgment on January 29, 2009. Doc. 37. Plaintiff, a *pro se* inmate, filed his own summary judgment motion on February 2, 2009. Doc. 38. The parties were advised of their obligations to respond to the opposing motion, doc. 41, and Defendants filed their response to Plaintiff's motion on February 9, 2009. Doc. 40. Plaintiff was provided an extension of time to respond, doc. 45, and his response has now been filed. Doc. 51.

In the interim period, it became clear that although all Defendants were sued in both their individual and official capacities, doc. 20, p. 1, service had only been accepted, however, by Defendant McDonough in his official capacity as he was no longer the Secretary of the Department of Corrections when served. *See* doc. 26.

Service was eventually carried out as to this Defendant in his individual capacity, docs. 42, 45, and 48, and a supplemental summary judgment motion[1] was filed by Defendant McDonough.  Doc. 49.  Furthermore, Walter McNeil was substituted for Defendant McDonough as to the official capacity claim pursuant to FED. R. CIV. P. 25(d).  Doc. 45.

**Allegations of the Second Amended Complaint, doc. 20**

Plaintiff complains that the Department of Corrections eliminated the Jewish Dietary Accommodation Program on August 15, 2007.  Doc. 20, p. 6.  Doing so, Plaintiff claims, requires him to eat non-Kosher food that is not prepared in accordance with Jewish dietary law, and violates his First Amendment Right to practice his religion.  Plaintiff also contends it violates his Fourteenth Amendment Right to equal protection of the law.  *Id.*, at 20-21.  Plaintiff claims he has been deprived of Due Process in the elimination of the Jewish Dietary Accommodation Program.  *Id.*, at 21.  Finally, Plaintiff contends he has been denied the opportunity to celebrate Passover, and Hanukkah, with "very special Kosha [sic] food."  *Id.*, at 22.  As relief, Plaintiff seeks the return of the Jewish Dietary Accommodation Program and to be able to celebrate Passover for 8 days with the same Kosher food previously served in prior years.  *Id.*, at 23.

**Legal standards governing a motion for summary judgment**

Either the claimant or Defendant may move for summary judgment, with or without supporting affidavits, upon all or any part of his or her claim.  Fed. R. Civ. P. 56(a) and (b).  Summary judgment should be granted "if the pleadings, depositions,

---

[1] Plaintiff's response is directed to both the original summary judgment motion filed by Defendants, doc. 37, and the supplemental motion, doc. 49.  Doc. 51.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When a motion is filed by defendants, they need not negate the plaintiff's claim. Defendants need only show "there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, in opposition to summary judgment, a plaintiff must "present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Put another way, Plaintiff has the burden of coming forward with evidentiary material demonstrating a genuine issue of fact for trial. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. Northern Crossarm Co., Inc..357 F.3d 1256, 1259 (11th Cir. 2004).

      Thus, in their motion for summary judgment Defendants have the initial burden to demonstrate an absence of evidence to support the Plaintiff's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also

provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Facts set forth in Defendants' statement will be deemed admitted (if supported by the record evidence) unless controverted by Plaintiff's statement.

Plaintiff may move for summary judgment, with or without supporting affidavits, on all or any part of his claim.  Fed. R. Civ. P. 56(a).  Summary judgment shall be granted in favor of Plaintiff "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Plaintiff is entitled to summary judgment only if "the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient."  10B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2734 (1983).  The motion should be denied if there is a fact issue as to any defense raised.  Id. at 406; United States v. Carter, 906 F.2d 1375, 1377 (9th Cir. 1990) (citing § 2734).  Since Plaintiff (as the party with the burden of proof) has a heavier burden on summary judgment, the Court will consider Defendants' motion first. If denied, the Court will consider whether Plaintiff is entitled to judgment as a matter of law.

**The undisputed relevant Rule 56(e) evidence**[2]

On August 16, 2007, the Florida Department of Corrections discontinued the Jewish Dietary Accommodation Program (hereinafter JDAP). Doc. 37, p. 3; Ex. A (doc. 37-2, p. 1). In eliminating the JDAP, the Secretary "also eliminated pork and pork products entirely from the Department's food services program." Doc. 37, Ex. C (doc. 37-2, p 9); doc. 37, Ex. B (doc. 37-2, p. 5). As a matter of policy, the Department allows inmates to choose an alternative meal if the regular meal program is not desired. Doc. 37, p. 3; Ex. B (doc. 37-2, pp. 5-6). Thus, if an inmate " wishes to avoid the regular meal program in accordance with his religious beliefs," he can have an alternative entree program which provides a "strict lacto-ovo or lacto-vegetarian" meal. Doc. 37, p. 3; Ex. B (doc. 37-2, p. 6). An inmate could also choose the vegan meal program which provides "strict vegetarian meals, through which he can avoid all animal products." *Id.* Finally, "[p]ork and pork by-products have been eliminated from all of the Department's menu plans. Doc. 37, Ex. B (doc. 37-2, p. 5).

Defendants have put forth evidence showing it would be "cost-prohibitive" for the Department to continue "to provide inmates with kosher meals." Doc. 37, Ex. A (doc. 37-2, p. 2). Kathleen Fuhrman, the Department's Public Health Nutrition Program Manager, explains that it "would be extremely cost prohibitive to provide inmates with

---

[2] Plaintiff filed a response to Defendants' summary judgment motion and supplemental motion, doc. 51, but did not present any documentary evidence with his argument. Plaintiff also did not present any such evidence with his own summary judgment motion, doc. 38. Thus, Defendants' evidence is essentially undisputed, although as noted separately, Plaintiff intends his response to also be considered an affidavit.

kosher meals" and doing so would require either purchasing and maintaining separate "kosher frozen or shelf stable entrees" or establishing "separate kitchens for preparation of kosher diets."  Doc. 37, Ex. A (doc. 37-2, pp. 2-3).  The administrative and financial burdens for doing either "are insurmountable."  Doc. 37, Ex. A (doc. 37-2, p. 2*).*  In July of 2008, the Food Services budget "was reduced by 9.5 million dollars."  *Id.*  The budget reduction created an obvious need to reduce costs.  *Id.*  If the Department attempted to provide Kosher foods to inmates, one option would be to implement Kosher frozen or shelf-stable food entrees.  *Id.*  That option "would cost an average of $4.00-$4.50 per meal" and that does not include having to add even more food items to "ensure nutritional adequate and be equivalent in calories to the regular menu."  Doc. 37, Ex. A (doc. 37-2, pp. 2-3).  "The yearly cost for feeding one inmate these meals would be $5,475.00 per year compared to the $952.65 - $974.18 per year for an inmate receiving the meals prepared by the Department."  *Id.*, at 3.  The Department had previously attempted to use a second option (set up a separate kitchen to prepare Kosher food) by creating the Jewish Dietary Accommodation Program.  Doc. 37, Ex. A (doc. 37-2, pp. 2-3).  However, the costs of providing separate kitchen facilities "skyrocketed since August [of] 2007, the date that the Department's Jewish Dietary Accommodation program was rescinded."  Doc. 37, Ex. A (doc. 37-2, p. 3).  It is suggested "that the Department would need to add at least an additional 45 kitchens, or $3,510,000 in construction costs" to accommodate kosher kitchens.  Doc. 37, Ex. B (doc. 37-2, p. 6).  Additionally, after constructions costs, there would still be the need to purchase

equipment for each kitchen would is estimated "to be approximately $42,799 per kitchen." *Id.*

Defendants also base the decision to elimination the JDAP due to "serious security issues including: the perception of preferential treatment for inmates receiving them; claims by inmates of adherence to specific religious beliefs requiring kosher food in an attempt to manipulate the system for assignments to institutions for gang related purposes; retaliation against inmates receiving kosher meals by other inmates; [and] increased security staffing requirements to maintain separate kosher food preparation areas." Doc. 37, pp. 3-4; Ex. C (doc. 37-2, p 9). James Upchurch, the Chief of the Bureau of Security Operations, explains that providing a special kosher menu "would be seen by the rest of the inmates as preferential treatment resulting in a negative impact on inmate morale and subsequently the institutional environment and orderly operation." Doc. 37, Ex. C (doc. 37-2, p. 9). Furthermore, when "the kosher diet is believed to provide better quality and/or more food," inmates have attempted to claim certain religious beliefs and manipulate the system simply to receive a "preferential diet." *Id.* Such efforts occurred while the Department was operating the JDAP. *Id.* Additionally, "if inmates believed that the higher cost to provide the kosher diet was somehow impacting in a negative way the quality and quantity of the food being served to them in the general population" it could lead to retaliation against the kosher inmates and disruption to the overall operation of the institution. Doc. 37, Ex. C (doc. 37-2, p. 10). Furthermore, creating separate kosher kitchens would require additional staff to be

present, which would have a significant impact on security and could impose even more costs as additional staff might be required is security were jeopardized.  *Id.*

Plaintiff's response was also intended as an affidavit, doc. 51, p. 2, and Plaintiff claims he has "no alternative" since discontinuation of the JDAP.  Plaintiff contends that Defendants' evidence, that Plaintiff can choose the alternative meal plan, is wrong.  Doc. 51, p. 3.  Plaintiff argues that none of the food is prepared in accordance with his religious beliefs and that he must eat Kosher food only.  *Id.*, at 3-11.  Plaintiff contends that he has not seen any problems during the administration of the JDAP while at Santa Rosa Correctional Institution.  *Id.*, at 11.

**Analysis**

**a.     First Amendment free exercise claim**

The First Amendment, made applicable to the States through the Fourteenth Amendment, "safeguards the free exercise of [one's] chosen form of religion."  Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940).  While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, *see* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*), prison regulations or policies "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (holding that the Turner v. Safley standard of review is applicable to claims that an inmate's free

exercise rights have been violated).[3]  O'Lone continued the Court's admonition to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prisons or jails.  482 U.S. at 350, 107 S.Ct. at 2405.

The most important case on the exercise of religious rights in prison is O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  The case involved a Muslim prisoner who was assigned to work outside the prison.  He wanted to be brought back inside the prison at noon on Fridays so that he could attend the congregational prayer required of him, known as Jumu'ah.  482 U.S. at 345-346, 107 S.Ct. at 2402-2403.  The Court held that while prisoners retain First Amendment rights, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  482 U.S. at 348, 107 S.Ct. at 2404, *quoting* Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).  The Court said:

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination."  To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of

---

[3] In City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 1997), the Court held that the Religious Freedom Restoration Act, (RFRA), 42 U.S.C. § 2000bb, *et seq.*, was unconstitutional as exceeding Congress's authority under the Constitution.  That decision required returning to the standard of review employed in Employment Div., Dept. of Human Resources v. Smith, 494 U.S. 872 (1990), and in the context of prison cases, O'Lone v. Shabazz, *supra*.

Case 4:07cv464-WS/WCS

> fundamental constitutional rights. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." This approach ensures the ability of corrections officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to "resolution by decree."

482 U.S. at 349-350, 107 S.Ct. at 2404-2405 (citations, including Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), and footnotes omitted).

Accordingly, "[a] prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532 U.S. 932 (2001) (holding that the Department of Corrections policy to not permit a "dual-name" on inmate identification card violated inmate's right to the free exercise of religion by denying him his Muslim identity and was unreasonable under Turner).

It is accepted that the elimination of the JDAP substantially burden the exercise of Plaintiff's religious faith. The question is whether, applying the reasonableness test of Turner v. Safley, the position of the Department can be upheld as reasonably related to a legitimate penological interest. O'Lone, 482 U.S. at 349, 107 S. Ct. at 2404-05.

The Turner standard employs four factors to determine the reasonableness of a challenged prison policy. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89, 107 S. Ct. at 2262, *citing* Block v. Rutherford, 468 U.S. 576, 586, 104 S. Ct. 3227, 3232, 82 L. Ed. 2d 438 (1984). If the "asserted goal is so remote"

from the regulation such that it appears "arbitrary or irrational" or if the "governmental objective" is not a legitimate and neutral one," the regulation or policy cannot be sustained as constitutional. 482 U.S. at 89-90, 107 S. Ct. at 2262. The remaining three factors consider: "(2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) 'the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there are 'ready alternatives' available 'that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.'" Spies v. Voinovich, 173 F.3d 398, 403 (6th Cir. 1999), *quoting* Turner, 482 U.S. at 90-91, 107 S. Ct. 2254. The Court is "not required to weigh evenly, or even consider explicitly, each of the four Turner factors." Spies, 173 F.3d at 403, *citing* Scott v. Mississippi Department of Corrections, 961 F.2d 77, 80 (5th Cir. 1992).

     Here, Defendants have shown a "valid, rational connection" in the elimination of the JDAP and the legitimate governmental interest of budgetary concerns and logistical constrains. Defendants have also shown a legitimate interest in security, and minimizing the appearance of special privileges for certain classes of inmates. Although Plaintiff contends he did not see any problems while the JDAP was still in existence at Santa Rosa Correctional Institution, his was a limited view at that institution. Further, that does not address the problems on a state-wide basis. Effective prison administration seeks to prevent problems before they occur and not just merely in response to problems already in existence.

Also, despite Plaintiff's argument that Defendants have not shown an interest "reasonably related to valid penological interests," doc. 51, p. 2, Defendants *have* demonstrated valid concerns which are not remote, removed, arbitrary, or disconnected from the elimination of the JDAP. Moreover, Defendants have shown that Jewish inmates have alternatives open to them in selecting a meal plan, and the alternate plans would appear to minimize impact on Plaintiff's First Amendment rights. Plaintiff contends that the vegetarian and lacto-ova meal plans are forbidden food in accordance with his religious beliefs, doc. 51, pp. 6-7, because they are not prepared as required and are not Kosher. However, these alternatives do limit the impact on Plaintiff. The evidence presented here reveals that accommodation of Plaintiff's desire to bring back the JDAP would negatively impact institutional safety and be detrimental to the allocation of prison resources. Contrary to Plaintiff's argument that the elimination of the JDAP is an "exaggerated response," doc. 51, pp. 3-4, considering the financial impact on Florida prisons in continuing the program, it is not exaggerated. The reasonableness test, therefore, is favorable to Defendants and they should prevail on the First Amendment claim.

Plaintiff's inability to eat Kosher food prepared in accordance with Jewish law is accepted as a significant limitation and infringement on the free exercise of his religious beliefs. However, Plaintiff's incarceration necessarily impacts upon, and limits, many privileges and rights enjoyed by other citizens. This infringement is necessary considering the impact on prison resources and security considerations of Florida's

penal system. 482 U.S. at 348, 107 S.Ct. at 2404. Summary judgment should be granted in favor of Defendants on this claim.

**b.    Equal Protection Claim**

The Constitution requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause prevents "governmental decisionmakers from treating differently persons who are in all relevant respects alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920), *cited in* Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); Lofton v. Secretary of Dept. of Children and Family Services, 377 F.3d 1275, 1277 (11th Cir. 2004). Plaintiff has come forward with no evidence to show that any other similarly situated inmates are being treated differently. The elimination of the JDAP occurred in all Florida prisons, effects all state prisoners, and would appear to restore the equal treatment of all prisoners. In other words, eliminating the diet also eliminated what could be considered by other prisoners as special treatment for Plaintiff. Plaintiff's argument that inmates in other states are provided Kosher food, doc. 51, p. 3, does not show that *these Defendants,* who are responsible for inmates incarcerated *in Florida,* have treated other inmates in Florida differently than Plaintiff. These Defendants are not responsible for the conditions of confinement for other prisoners incarcerated in other states, or even in federal prisons. Summary judgment should also be granted to Defendants on this claim.

**c.    Due Process claim**

The law is well established that prisoners have no constitutional right to remain in a particular institution with particular rules, regulations and privileges. <u>Meachum v. Fano</u>, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); <u>Montayne v. Haymes</u>, 427 U.S. 236, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976).  Following <u>Meachum</u> and <u>Montanye</u>, the Supreme Court made clear that the Due Process Clause does not directly protect an inmate from changes in the conditions of his confinement, as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed upon him.  <u>Sandin v. Conner</u>, 515 U.S. 472, 478, 115 S. Ct. 2293, 2297, 132 L. Ed. 2d 418 (1995) (reaffirmed the holdings of <u>Meachum</u> and <u>Montayne</u> and reiterating again that "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."); <u>Meachum</u>, at 224, 96 S. Ct. at 2538.  The Due Process Clause protects interests "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, at 484, 96 S. Ct. at 2300.  Changes in certain privileges are not atypical. Plaintiff's complaints of being unable to eat Kosher food as he had been able to do, is not atypical.  Limitations on food preparation and meal plans are part of being incarcerated, and may even vary depending on the facility where a prisoner is housed. Plaintiff's due process claim must fail.

Having determined that summary judgment should be granted to Defendants on the above claims, there is no need to consider the defenses of qualified immunity,[4] Eleventh Amendment immunity, no physical injury such that compensatory or punitive damages are precluded under 42 U.S.C. § 1997e(e), or the argument that Plaintiff did not exhaust his administrative remedies as to his ability to celebrate Hanukkah and Passover.[5]  Summary judgment should be granted in favor of all Defendants on Plaintiff's claims.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 37, and Defendants' supplemental motion for summary judgment, doc. 49, be **GRANTED**, that Plaintiff's motion for summary judgment, doc. 38, be **DENIED**, and that judgment be entered in favor of Defendants on all of Plaintiff's claims.

**IN CHAMBERS** at Tallahassee, Florida, on June 26, 2009.

   s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Defendant McDonough's supplemental motion for summary judgment, doc. 49, simply incorporates the arguments and facts from the original summary judgment motion, and raises the qualified immunity defense as to the claims against him in his individual capacity.  Doc. 49.

[5] Observing Hanukkah and Passover also entail the request for Kosher food.  As that will not be forthcoming in light of the ruling on the primary First Amendment claim, this claim could not succeed even if it were exhausted.

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**